# DEAKIN *v.* SCHWARTZ.

PATENTS; INTERFERENCE; DILIGENCE.

Where in an interference involving the invention, in a party-line telephone
system, of means for selectively ringing any one of the subscribers
upon the line after the calling subscriber's line has been automati-
cally connected therewith, it appeared that the junior party actually
reduced to practice the broad invention called for by the first two
counts of the issue, which counts dominated the invention called for
by the other counts, and prepared, but did not file, an application
disclosing all of the counts of the issue until about four months
before the senior party filed his application, it was *held*, in award-
ing priority to the junior party on all of the counts of the issue;
that the obvious reason for his delay in filing his application was in
order that he might test his invention, and that he was not lacking
in diligence.

No. 992.    Patent Appeals.    Submitted November 10, 1915.    Decided De-
                    cember 6, 1915.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference proceeding.          *Reversed.*

The facts are stated in the opinion.

*Mr. Howard M. Morse, Mr. D. C. Tanner,* and *Mr. J. G.
Roberts* for the appellant.

*Mr. Charles C. Bulkley* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Appeal from a decision of the Patent Office awarding priority
of invention as to counts 3 to 12, inclusive, in an interference
proceeding to the appellee, Michael Schwartz.

As originally declared, the proceeding involved twelve counts.

Of those counts, priority of invention as to counts 1 and 2 was awarded appellant, Gerald Deakin, and appellee acquiesces in that award. We reproduce count 1 as illustrative of the two counts awarded appellant, and counts 7 and 10 as illustrative of the counts awarded appellee:

"1. In a telephone system, a calling line, called line, a plurality of stations on said called line, a means of completing connections between said calling and said called lines, said means having one called line branch and a plurality of calling line branches, any of which latter branches may be selected by said calling line, a ringer at each station connected with said called line, arranged to operate only when supplied with a particular kind of arrangement of current, and means of supplying the proper arrangement or kind of current to operate the ringer at any one of said stations connected to said called line, depending upon which of said calling line branches of said means of completing connections between said calling and said called lines is selected by the calling line."

"7. In a party-line telephone system, a calling and a called subscriber's line, a connector for seizing the called line, and means including a selector for extending connection from the calling line to said connector, said selector including a plurality of banks of contacts, multiple connections from a plurality of contacts of one of said banks to said connector, and independent connections from corresponding contacts of a second of said banks to said connector."

"10. In a party-line telephone system, a calling and a called subscriber's line, a connector for seizing the called line, and means including a selector for extending connection from the calling line to said connector, said selector including a plurality of banks of contacts, multiple connections from a plurality of contacts of one of said banks to said connector, independent connections from corresponding contacts of a second of said banks to said connector, a plurality of ringing generators in said connector for supplying ringing current to the called line, a relay in each of said independent connections for controlling the selection of one of said generators, and means for energizing one

of said relays when connection is made with said connector, the relay energized being dependent upon the level of the selector switch employed in extending the connection."

Prior to the present invention the use of two-party and four-party lines in both manual and automatic telephone systems was common. The characteristic feature of the present invention, as succinctly stated by the Examiner of Interferences, "is the provision of means for selectively ringing any one of the subscribers upon a party line, after the calling subscriber's line has been automatically connected thereto." The tribunals of the Patent Office agree that counts 1 and 2 embody this general idea and dominate all of the other counts. It is further agreed that appellant not only conceived and disclosed this broad invention, but that he actually reduced the same to practice by installation in telephone exchanges in Berkeley and Oakland, California, prior to the earliest date claimed by appellee as his date of conception and disclosure. In other words, before appellee's entry into the field at all, appellant had publicly and successfully installed the subject-matter of counts 1 and 2.

On June 17, 1911, appellant signed and executed before a notary public the application herein, figure 2 of which, the Patent Office tribunals concede, discloses the subject-matter of the counts that have been awarded to appellee. The evidence upon this point is very clear. A Mr. McCann, at the time chief clerk of appellant, who then was chief engineer of the Bay Cities Home Telephone Company, together with the stenographer, checked the sheets of the application several times, and, in that way, became familiar with it. On the date in question, at the request of appellant, who had communicated with the notary over the telephone, he took the application to the notary, who placed his seal on his jurat. Upon Mr. McCann's return, appellant requested that he have the notary place his seal upon every sheet of the application. Thereupon, on the same day, Mr. McCann returned to the notary, who impressed a small pocket seal upon each of the other pages. The notary, an entirely disinterested witness, not only fully corroborated this witness, but, by reference to his notarial record book, was en-

abled accurately to fix the date. Had this application been filed immediately thereafter, it would have constituted a reduction to practice of all of the counts of the issue, but on January 25th following, appellee filed his application, and claims conception and disclosure as on November 25, 1911. On March 27, 1912, or about two months after appellee filed his application, appellant filed the application which he had executed as above noted.

The Examiner of Interferences ruled that, even though the execution of appellant's application of June 17, 1911, be considered sufficient evidence of conception and disclosure of the invention, there was no evidence to show that appellant had been diligent in "developing his invention from a time just prior to the date upon which Schwartz entered the field up to the time when Deakin's application was filed," and, accordingly, awarded priority to Schwartz as to those counts. The Examiners in Chief affirmed this ruling, as did the Assistant Commissioner.

It was earnestly contended before the Patent Office, as before this court, that the difference between the two groups of counts, that is, between the dominating counts awarded to appellant and the counts awarded to appellee, is one of words, and not of substance. While we are impressed with this contention, we prefer to place our decision upon a different ground. The evidence clearly and conclusively shows that when, in June of 1911, appellant executed the application, which he subsequently filed in an unchanged condition, he was publicly installing an apparatus containing the dominating subject-matter of the invention. And, assuming that the group of counts here involved discloses another and modified form of the invention, what was more natural than that he should first reduce to practice the broad invention? Before the Patent Office, appellee, while admitting that apparatus containing the subject-matter of counts 1 and 2, that is, containing the dominating invention, was installed in Berkeley and Oakland, California, contended that the evidence did not establish that this installation took place prior to March, 1912. The Patent Office, however, ruled that it took place prior to November 25th, 1911, appellee's date of concep-

tion and disclosure.   According to the proof, therefore, appellant, just prior to appellee's entry into the field, was diligently engaged in testing out the main invention, and within four months from the reduction to practice of the main invention he filed his application disclosing that invention and the modified form which is the subject-matter of this interference.   At the time of the taking of the testimony, appellant had assigned his invention to the Western Electric Company, and was himself in Antwerp, Belgium.   While, of course, his testimony might have been taken, we think the evidence fully warrants the conclusion that the filing of the application so soon after the reduction to practice of the dominating invention precludes a finding of lack of diligence as to the subsidiary invention.   Obviously, the only reason for delaying the filing of the application was the trying out of the invention, and to hold, under the circumstances of this case, that the short time that elapsed was more than sufficient for that purpose, would be to perpetrate an injustice and deprive the real inventor of the fruits of his efforts.

The decision is reversed.                              *Reversed.*

A petition for a rehearing was denied December 30, 1915.